UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:09cv101-RJC

| ANTHONY TRUSELL, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| STEVE BAILEY et al., | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment(Doc. No. 31) and the related filings.[1] For the reasons set forth below, the Defendant's Motion for Summary Judgment will be GRANTED.

I.      FACTUAL AND PROCEDURAL HISTORY

On August 19, 2009, the Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 against several defendants alleging deliberate indifference and excessive force. (Doc. No. 1). The Court conducted an initial review of Plaintiff's Complaint and dismissed all defendants except Officer Johnson and Officer McKinney. (Doc. No. 6).

The Plaintiff alleges the following facts. On April 1, 2009, Defendants Johnson and McKinny transported him to Dr. Caldwell's office for a scheduled colonoscopy. (Doc. No. 1 at 5).

---

[1] Plaintiff filed a motion to continue (Doc. No. 38) on August 23, 2010, asking for a sixty day continuance so he could obtain copies of his DOC medical file. Plaintiff has since supplemented the record with pages from his medical file, therefore, his motion to continue is dismissed as moot.
On October, 2010, Plaintiff filed a Motion to Strike Defendant's Motion for Summary Judgment (Doc. No. 40). Plaintiff argues that Defendants have attempted to undermine the severity of his medical condition. This Court allowed Plaintiff to supplement the record with pages from his medical file; therefore, Plaintiff's Motion to Strike is denied.

1

At the office, Defendants were given a medical questionnaire and consent forms for Plaintiff to complete and sign. Defendant Johnson presented the medical paperwork to Plaintiff, who stated that he was unable to complete it because he was handcuffed. (Id.). Plaintiff contends Officer Johnson refused to assist him in completing the medical consent forms and that as a result Plaintiff was not able to have the colonoscopy procedure performed. (Id. at 7). Dr. Caldwell would not perform the procedure without Plaintiff's consent, and Plaintiff was returned to Alexander Correctional Institution without having received the colonoscopy. (Id. at 7; Doc. No. 32-2 at 18)

On the return trip to Alexander Correctional, Plaintiff calmly told Officer Johnson that she was wrong and that he did not refuse to be seen by his doctor. (Complaint at 7). Plaintiff told Officer Johnson that he was going to file a complaint against her. Officer Johnson "became belligerent and spoke vile to Plaintiff using racial insults and saying 'f - you grievance.'" (Id. at 9). After the verbal confrontation between Officer Johnson and Plaintiff, Officer Johnson, "while talking on a cell-phone, and threatening to spray this N– word flew into a vehement rage, and spun around in the passenger seat, aiming the nozzle of her mace-can through the metal partition screen, and sprayed Plaintiff directly in the eyes, nose, and mouth without any provocation of a threat." (Id.). Officer Johnson later lied and claimed that Plaintiff spit at her. (Id). Plaintiff contends that Defendant McKinney supported Officer Johnson in this lie and also denied him necessary medical treatment.

In his Amended Supplemental Complaint (Doc. No. 41), which this Court construes as supplemental evidence in support of his original Complaint, Plaintiff seeks to supplement the record to cover events that have transpired since the initial filing of his Complaint. Plaintiff contends that he was diagnosed with a pilondial cyst in May 2010 while housed at Scotland Correctional. In October 2010, Plaintiff underwent surgery at Pinehurst Surgery Clinic to excise the cyst. (Doc. No.

41 at 6). During the surgery, an anal fistula was discovered and removed. (Id.). On October 25, 2010, Plaintiff underwent a colonoscopy which established that he had been afflicted with Crohn's disease for years.[2] (Id.). Plaintiff argues that these events establish that his condition was sufficiently serious that the defendants' decision to remove him from Dr. Caldwell's waiting room on April 1, 2009, 18 months earlier, amounted to deliberate indifference. (Id. at 7-8).

The Defendants contend the following facts. Officer Johnson and Officer McKinny transported Plaintiff to Dr. Caldwell's office for a colonoscopy on April 1, 2009. (Doc. No. 32-3: Johnson Aff. ¶ 6).[3] Plaintiff was transported in hand and leg cuffs, which were secured with black box restraints tethered to a waist chain and cuffed in front of his body. (Id. ¶ 9). Plaintiff was taken to the waiting room at Dr. Caldwell's office, which included other patients waiting to see the doctor. The receptionist gave Officer Johnson a medical history questionnaire to complete and a medical consent to sign. (Id. ¶ 10). Officer Johnson brought the forms to Plaintiff and told him she would record his answers but that he would have to sign the consent form. (Id. ¶ 11). Plaintiff responded that he would not sign "a G-d D----d thing because he was in cuffs." Plaintiff told Officer Johnson it was her job to fill out the paperwork and sign it for him. (Id. ¶ 12). Officer Johnson asked Plaintiff if he was refusing to complete the questionnaire and sign the consent and he replied, "Yes,

---

[2] The Court notes that Plaintiff provided his personal copy of certain pages from his DOC medical file. However, such exhibits do not include medical corroboration of his recent October 2010 surgery, colonoscopy or diagnosis with Crohn's disease. The exhibits filed with his Motion to Strike do appear to corroborate that Plaintiff was scheduled for surgery on October 15, 2010. (Doc. No. 40-1 at 8). The Court will assume the accuracy of these facts, as Defendants concede these facts. (Doc. No. 43-3 at 2).

[3] Officer Johnson provided an affidavit in support of Defendants' Motion for Summary Judgment. (Doc. No. 32-3 at 2). The record also includes a disciplinary report which indicates that Officer McKinney supported Officer Johnson's version of the facts including that Plaintiff refused to sign the paperwork at Dr. Caldwell's office and that Plaintiff spit at Officer Johnson. (Doc. No. 1-3 at 15).

let's go." (Id. ¶ 15). Officer Johnson did not want to engage Plaintiff any further, worried that if she did, it could endanger the other patients, the staff, and herself. (Id. ¶ 16). Officer Johnson returned the questionnaire and forms and told the receptionist that Plaintiff refused to sign the form. The receptionist advised Dr. Caldwell and told Officer Johnson that Dr. Caldwell would not perform the procedure without a signed consent. (Id. ¶ 17). Dr. Caldwell wrote a letter to Plaintiff's file explaining that he was unable to perform the scheduled colonoscopy on April 1, 2009, because Plaintiff refused to sign the consent form for the procedure. (Doc. No. 32-2 at 18).

Officer Johnson and Officer McKinney returned Plaintiff to the van to take him back to Alexander Correctional. (Id. ¶ 18). Plaintiff, who was seated in the rear of the van separated from Defendants by a metal cage, was agitated over missing his appointment and began yelling at Officer Johnson using profanity and threatening Officer Johnson. (Id. ¶ 22). Officer Johnson told Plaintiff to "quiet down and stop creating a disturbance." (Id. ¶ 23). At 8:55 a.m., Officer Johnson called Lloyd Hames, the support sergeant at Alexander Correctional and advised him of Plaintiff's disruptive behavior, his threats, his use of profanity, and his refusal to obey orders. Once Officer Johnson got off the phone, Plaintiff spat towards the cage that separates the front seats from the rear portion of the van. Officer Johnson ordered Plaintiff to be quiet and stop spitting. Plaintiff replied using vulgar language. (Id. ¶¶ 24-26). Plaintiff then spat at the cage again and Officer Johnson administered a burst of pepper spray. Even after Officer Johnson pepper sprayed Plaintiff, he continued with his threats against her. (Id. ¶ 31). At 9:00, Officer Johnson called Sergeant Hames again and advised him that she had administered pepper spray and explained her reasons for doing so. (Id. ¶ 33).[4]

---

[4] The record of Plaintiff's disciplinary report indicates that Sergeant Hames confirmed both phone conversations with Officer Johnson. (Doc. No. 1-3 at 15).

Once back at Alexander Correctional, Plaintiff was removed from the van by custody staff. (Id. ¶ 6). Plaintiff was examined by a nurse and told the nurse, "I have no injuries to report." (Doc. No. 43-2). The nurse noted "no acute signs of distress." Plaintiff was allowed to shower "to wash pepper spray from eyes, face and body." The nurse observed "[n]o signs of respiratory distress. No signs of any broken skin or injury." (Id.). Shortly thereafter, a nurse went to Plaintiff's cell to re-examine him and observed him doing push-ups. (Id.) When she inquired if he was having any breathing problems, he came to the cell door, but would not answer the nurse's questions. The nurse did note that Plaintiff's eyes appeared red, but were not tearing. (Id.).

As a result of Plaintiff's conduct in Dr. Caldwell's waiting room, he was charged in an administrative disciplinary proceeding with the use of profane language and interference with correctional staff. Plaintiff pleaded not guilty, but was adjudicated guilty of both charges. (Id. ¶ 35; Doc. 32-3 at 10). As a result of Plaintiff's conduct in the van during the return trip from Dr. Caldwell's office to Alexander Correctional, Plaintiff was charged with the use of profane language, threatening to harm or injure staff, and attempting to spit on correctional staff. (Doc. No. 32-3 ¶ 36; Doc. 32-3 at 10).

On April 16, 2009, Plaintiff filled out a sick call request asking that his colonoscopy be rescheduled. On June 4, 2009, Plaintiff saw the unit physician for evaluation for the colonoscopy. The physician's note of the visit states that the assessment had to be cancelled because Plaintiff was cussing and belligerent. (Doc. No. 32-2 at 19). On June 18, 2009, Plaintiff again presented to the unit physician for evaluation for the colonoscopy. The physician's note states "[n]o improvement in attitude toward me. Will give I.M. [inmate] time to calm down + be more cooperative." (Id.). On June 25, 2009, Plaintiff again presented to the unit physician for evaluation for the colonoscopy. The physician's note states "I M [inmate] is not cooperating. Will not allow me to evaluate him."

(Id. at 20).

## I. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the Record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677, 557 U.S. ___ (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

**Missed Colonoscopy - Deliberate Indifference**

Plaintiff contends that Defendants Johnson and McKinney were deliberately indifferent to his serious medical need by refusing to assist him in filling out his medical paperwork, which caused him to miss his scheduled colonoscopy.

A prisoner makes out a claim under the Eighth Amendment if he can establish that prison medical staff was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment violation occurs only if the medical need is serious. Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). Additionally, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to him or which would be apparent to a reasonable person in his position. See id. at 852-53. However, a plaintiff must prove that the defendant was aware of facts showing a substantial risk of harm and also drew the inference that a substantial risk of harm existed. See Johnson v. Quinones, 145 F.3d 164, 167-68 (4th Cir. 1998). To be actionable, an inmate's treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Additionally, simple negligence is not a constitutional deprivation. Daniels v. Williams, 474 U.S. 327 (1986); Estelle v. Gamble, 429 U.S. 97, 105-106 (1976). Applying the above law to Plaintiff's allegations, Plaintiff has not met his burden in stating a deliberate indifference claim.

Defendants, who are transport officers and not medical personnel, transported Plaintiff to his scheduled appointment for a colonoscopy. Plaintiff contends that he was not able to complete his medical paperwork and sign his consent form because he was handcuffed and that Officer Johnson refused to complete his paperwork for him and as a result he was not able to complete have his colonoscopy performed. Plaintiff argues that Officer Johnson's refusal to assist him was deliberate indifference to his need for medical care. Defendant Johnson contends that she was willing to assist Plaintiff in the medical questionnaire but that Plaintiff refused even to sign his name to the consent form. Plaintiff told her that he would not sign "a G_d D----d thing" because he was in cuffs." (Doc. No. 32-2 ¶ 12). Defendant Johnson decided not to verbally engage Plaintiff in the waiting room of the doctor's office. (Id. ¶ 16). She also believed Plaintiff's complaints about his cuffs could have been a ruse, designed to induce a breach of security. (Id.). Defendant Johnson returned the questionnaire and consent forms to the receptionist and told her Plaintiff refused to sign. (Id. ¶ 17). The receptionist informed Dr. Caldwell, who refused to do the procedure without a signed consent form. (Id. ¶ 18). Dr. Caldwell included a letter in Plaintiff's medical chart explaining that because Plaintiff refused to sign the consent form, he was unable to perform the procedure, and Plaintiff was returned to the correctional facility. (Doc. No. 32-2 at 18).

In response to Defendants' Motion for Summary Judgment, Plaintiff questions the motivations of Dr. Stover, a Department of Corrections contract physician who provided an affidavit in support of Defendants' Motion for Summary Judgment, and Dr. Dawkins, Plaintiff's treating physician, upon whose chart notes Dr. Stover relied in preparing his affidavit. Plaintiff argues that Dr. Dawkins' notations in his medical chart are not credible because Dr. Dawkins was angered over his being named in this lawsuit; so he falsified Plaintiff's medical records and fabricated Plaintiff's profane statements. (Doc. No. 36 at 3). However, Dr. Dawkins's notes are dated June 4, 18, and

8

25, 2009, and Plaintiff did not file the instant lawsuit until August 19, 2009. (Doc. No. 32-2 at 19 - 21; Doc. No. 1). Plaintiff has provided no evidence of a reason why Dr. Dawkins would falsify his records two months prior to the initiation of this lawsuit. Plaintiff also questions Dr. Dawkins's reliability in that he did not report Plaintiff's profane tirades in accordance with DOC policy. The fact that Dr. Dawkins did not report Plaintiff's inappropriate behavior to anyone does not discredit his notes regarding Plaintiff's behavior during medical examinations.

Plaintiff also claims that Dr. Stover provided a distorted analysis of his medical records, noting that his complaints of bloody stool date back to 2005. (Doc. No. 36 at 4). A review of Dr. Stover's affidavit establishes that he offered no opinion of the genesis of Plaintiff's complaints or his symptomolgy. Instead, Dr. Stover began his analysis noting that DOC physicians thought Plaintiff's symptoms warranted further diagnostic testing such that they arranged for Defendants to transport Plaintiff to Dr. Caldwell's office for a colonoscopy on April 1, 2009. (Doc. No. 32-2 at 3-4).

The evidence establishes that Plaintiff was at Dr. Caldwell's office on April 1, 2009, for a scheduled colonoscopy, which is a medical diagnostic tool. (Doc. No. 32-2 ¶¶ 9-10). Defendants removed Plaintiff from Dr. Caldwell's office and transported him back to the correctional facility when Plaintiff refused or was unable to sign the consent form. (Doc. No. 32-3 ¶¶ 17 and 18; Doc. No. 32-2). The evidence further establishes that three times after the April 1, 2009, failed colonoscopy, Plaintiff submitted sick call requests asking that his colonoscopy be rescheduled. (Doc. No. 32-2 at 19, 20, and 21). Each time, the doctor's note indicates that the assessment for the colonoscopy was cancelled because of Plaintiff's profane and belligerent attitude toward the doctor. (Id.). Therefore, the record supports the conclusion that Defendants Johnson and McKinney, transport officers and not medical personnel, were not responsible for the fact that Plaintiff did not

receive a colonoscopy on April 1, 2009. Even to the extent they could be deemed responsible, failure to fill out medical paperwork for the Plaintiff does not rise to the level of deliberate indifference to a serious medical need. There is simply no evidence in the record that Defendants were aware of facts showing a substantial risk of harm and that they drew the inference that a substantial risk of harm existed. Johnson v. Quinones, 145 F.3d 164, 167-68 (4th Cir. 1998). Further, Defendants Johnson and McKinney cannot be held responsible for Plaintiff's not having a colonoscopy after April 1, 2009.

### Pepper Spray Incident – Excessive Force

To succeed on an excessive force claim under the Eighth Amendment, a prisoner must prove: (1) a subjective component – that the prison official acted with a "sufficiently culpable state of mind," and (2) an objective component – that the harm inflicted was sufficiently serious. Wilson v. Seitser, 501 U.S. 294, 298 (1991). The key issue with respect to the subjective inquiry is whether the force was applied in a good-faith effort to maintain or restore order and discipline, or maliciously and sadistically to cause harm. Hudson v. McMilliam, 503 U.S. 1, 6 (1993). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8. The inmate must show that the use of force was "objectively harmful enough" to constitute a constitutional violation. Id. This requires the court to look at the severity of the inmate's injuries in the context under which they occurred. While the focus is on the amount of force used as opposed to the extent of the injury, the absence of serious injury is not irrelevant to the Eighth Amendment inquiry. Instead, "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Hudson v. McMillian, 503 U.S. 1 (1992) (quoting Whitley, 475 U.S. at 321.) "The extent of the injury may also provide some indication of the amount of force

10

applied." Wilkins v. Gaddy, 130 S. Ct. 1175 (2010). Moreover, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not repugnant to the conscience of mankind." Id. (internal quotation marks omitted). "An inmate who complains of a 'push or shove' that causes no discernable injury almost certainly fails to state a valid excessive force claim." Wilkins, 130 S. Ct. 1175, 1178 (2010) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

Here, Plaintiff admits that he and Officer Johnson engaged in a verbal confrontation (Doc. No. 1 at 9), after which Officer Johnson sprayed mace in his face. Officer Johnson admits that she sprayed her mace can at Plaintiff but contends that her actions followed Plaintiff spitting toward her twice, threatening her, and using profane language toward her. Officer McKinney confirmed that Officer Johnson used her pepper spray on Plaintiff after a verbal confrontation with Plaintiff in which Plaintiff used profane language, threatened Officer Johnson, and spit at her. (Doc. No. 1-3 at 15). Plaintiff was seen by a nurse shortly after being sprayed with mace by Officer Johnson. (Doc. No. 32-2 at 7). Plaintiff told the nurse, "I have no injuries to report." The nurse noted that Plaintiff exhibited "no signs of acute distress" and also noted that Plaintiff was permitted to shower "to wash pepper spray from eyes, face and body" and that Plaintiff showed "no signs of respiratory distress[,] [and] no signs of any broken skin or injury." (Doc. No. 43-2). Shortly thereafter, Plaintiff was again examined by a nurse in his cell. When the nurse arrived at his cell, Plaintiff was doing push-ups. When the nurse inquired whether Plaintiff was having any breathing problems, Plaintiff came to the door of his cell, but refused to answer her question. The nurse noted that Plaintiff's eyes appeared red, but were not tearing. (Id.).

11

The record establishes that Defendant Johnson administered a single burst of pepper spray after a verbal confrontation with Plaintiff and after Plaintiff allegedly spat at her.[5] Johnson's response of a single blast of pepper spray in this context appears to be a good-faith effort to restore order and discipline. Hudson v. McMillian, 503 U.S. 1, 6 (1993). Further, Plaintiff's lack of injury in this case suggests the amount of force used, which was limited to a single burst of pepper spray following at least a verbal confrontation, and after which he was allowed to wash the sprayed area, was not sufficiently serious. As the Fourth Circuit has explained,

> mace can constitutionally be used in small quantities . . . to control a recalcitrant inmate . . . . A limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate. Moreover, prompt washing of the maced area of the body will usually provide immediate relief from pain.

Williams v. Benjamin, 77 F.3d 763 (4th Cir. 1996).

The single burst of pepper spray after a verbal confrontation about which Plaintiff complains constitutes a minimal use of force paired with de minimis injury. In this context, such force is not of a sort repugnant to the conscience of mankind, and it is excluded from constitutional recognition under the Eighth Amendment's prohibition of cruel and unusual punishment.[6] Therefore, the Court concludes that Plaintiff has failed to state a valid excessive force claim.

---

[5] Plaintiff contends that he did not spit at Defendant Johnson. However, during the disciplinary proceedings, which occurred shortly after the incident and well before Plaintiff filed the instant lawsuit, Defendant McKinney confirmed the Plaintiff did spit at Officer Johnson.

[6] While there is a genuine dispute as to whether Plaintiff actually spat at Defendant Johnson, it is not a dispute of material fact. Even without the spitting, the single burst of pepper spray after the verbal confrontation, especially where the record reflects no evidence of injury to the Plaintiff and prompt washing of the sprayed area, does not rise to the level of a constitutional violation.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that

(1) Defendants' Motion for Summary Judgment (Doc. No. 31), is **GRANTED**, and Plaintiff's Complaint (Doc. No. 1) is dismissed with prejudice for failure to state a claim upon which relief can be granted;

(2) Plaintiff's Motion to Continue (Doc. No. 38) is **DISMISSED** as moot; and

(3) Plaintiff's Motion to Strike (Doc. No. 40) is **DENIED**.

**SO ORDERED.**

Signed: March 15, 2011

Robert J. Conrad, Jr.
Chief United States District Judge